UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANA ROISIN MURPHY,

       Plaintiff,                  CIVIL ACTION NO. 15-cv-14252

     v.                               DISTRICT JUDGE SEAN F. COX

COMMISSIONER OF             MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Dana Roisin Murphy seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 15) and Defendant's Motion for Summary Judgment (docket no. 16). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.     **RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 15) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 16) be **GRANTED**.

## II.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for supplemental security income on August 28, 2012, alleging that she has been disabled since August 1, 2012, due to a learning disability, attention deficit hyperactivity disorder (ADHD), depression, and sleep disturbances due to insomnia.  (TR 215-20, 231, 235.)  The Social Security Administration denied Plaintiff's claims on December 14, 2012, and Plaintiff requested a *de novo* hearing.  (TR 158-67, 172-75.)  On January 23, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Janet L. Alaga-Gadigian.  (TR 34-154.)  In a May 20, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy.  (TR 19-30.)  The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently pending before the Court.

## III.  HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 15 at 5-13), and the ALJ (TR 22-23, 24-29, 30) each set out a detailed, factual summary of Plaintiff's medical record and the hearing testimony.  Defendant adopted the facts as stated in the ALJ's decision and also set forth a myriad of facts in the argument portion of her brief.  (Docket no. 16 at 6, 10-20.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between Plaintiff's and the ALJ's recitations of the record.  Therefore, the undersigned will incorporate the factual recitations by reference.  Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

**IV.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of August 28, 2012, and that Plaintiff suffered from the following severe impairments: major depressive disorder, learning disorder with an expressive language impairment, attention deficit hyperactivity disorder (ADHD), generalized anxiety disorder, posttraumatic stress disorder (PTSD), impulse control disorder, and an impaired intellectual disorder.  (TR 21.)  The ALJ also found that Plaintiff's alleged oppositional defiant disorder was not a severe impairment.  (TR 21.)  Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 21-23.)  The ALJ then found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: no climbing ladders, ropes or scaffolds; work that avoids all exposure to hazardous machinery or unprotected heights; unskilled jobs as defined in the DOT with specific vocational preparation levels of 1 or 2 with simple, routine tasks; no production rate work; as well as only occasional interaction with the general public, co-workers, and supervisors.

(TR 23-29.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 29-30.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time since August 28, 2012, the date the application was filed.  (TR 19, 30.)

**V.  LAW AND ANALYSIS**

    **A.  Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper

legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

>   (4)   Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.   Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is

reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because the ALJ's finding that Plaintiff did not meet Listing 12.05C is not supported by substantial evidence. (Docket no. 15 at 14-25.) Listing 12.05C provides:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C. In order to demonstrate intellectual disability under Listing 12.05C, Plaintiff must demonstrate that her impairment satisfies the diagnostic and severity criteria of that listing. More specifically, Plaintiff must demonstrate (1) significantly subaverage intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or mental impairment imposing an additional and significant work-related limitation of function. *West v. Comm'r*, 240 F. App'x 692, 697-98 (6th Cir. 2007). Here, the ALJ found that the requirements of Listing 12.05C were not met because the record did not establish that Plaintiff had deficits in adaptive functioning[1] and because her valid IQ scores did not fall within the required range. (TR 22-23.)

---

[1] Plaintiff argues that the ALJ misstated the adaptive-functioning standard by stating that Plaintiff's "abilities and activities detailed in the record show that there are not deficits in adaptive functioning *resulting in mental*

"The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009) (citing *Heller v. Doe,* 509 U.S. 312, 329 (1993) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* 28–29 (3d rev. ed. 1987) ("DSM–III"))). "To determine the definition of mental retardation[2] under the SSA, it is appropriate to consult leading professional organizations' definitions." *Id*. (citing 67 Fed.Reg. 20022 (2002)). Both Plaintiff and the ALJ rely on a similar definition of adaptive functioning promulgated by the American Psychiatric Association, which, in addition to the statement quoted above, provides that adaptive functioning describes how well a person meets the standards of personal independence and social responsibility expected of someone in that person's age group, sociocultural group, and community setting. (Docket no. 15 at 16 (citing *Heller,* 509 U.S. at 329 (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* 28–29) (DSM-III)); TR 22 (citing DSM-IV-R 42).) *See also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 12.00C(1) (defining adaptive activities to include activities of daily living such as cleaning, cooking, shopping, paying bills, maintaining a residence, taking public transportation, and exercising proper self-care).

In finding that the record evidence did not establish that Plaintiff had deficits in adaptive functioning, the ALJ reasoned that Plaintiff reported the following daily activities: using public transportation, hanging out with her boyfriend, taking care of her cat, preparing simple meals, reading, playing video games, doing crafts, and completing jigsaw puzzles. (TR 27.) The ALJ

---

*incapacity*." (Docket no. 15 at 15-16 (citing TR 22) (emphasis added).) Plaintiff argues that the italicized phrase is not part of the adaptive functioning standard, and that by adding this requirement to her analysis, the ALJ employed an unduly strict standard, which constitutes reversible error. (*Id*.) Plaintiff's argument in this regard fails, as there are at least three other instances in the ALJ's decision in which she states only that the record does not establish "deficits in adaptive functioning," period. (*See* TR 22, 23.)

[2] As Plaintiff and Defendant point out, the Social Security Administration has replaced the term "mental retardation" with the term "intellectual disability" in the Listing of Impairments. *See* 78 Fed. Reg. 46,499 (Aug. 1, 2013).

further noted that Plaintiff enjoyed reading books written by Jane Austen and books in a series like Harry Potter and The Hunger Games, that she could finish a book in a day or two, and that she showed great recall of the plot and characters in the books that she read. (TR 27.) The ALJ also discussed the August 2012 report of Plaintiff's Developmental and Behavioral Pediatrician, Cheryl H. Hack, M.D., in which she conveyed that Plaintiff was "getting out a little more on her own" and "continue[d] to make better decisions more independently." (TR 22, 24 (citing TR 438).)

      The ALJ also considered and relied upon the records generated from Plaintiff's participation in a vocational program, in which she spent one half of her day taking classes and the other half of her day working at the Salvation Army or a dog grooming business. (*See* TR 25; TR 26 (citing TR 548).) Based on her review of the records, the ALJ acknowledged that Plaintiff worked with a job coach but noted that Plaintiff was not distracted while she was working despite the fact that the work site was very busy and congested with store patrons as well as other employees. (TR 28 (citing TR 548, 549).) The ALJ also noted that with regard to her work performance, Plaintiff was described as being reliable and punctual, able to begin familiar work tasks without prompting, and able to seek guidance from management to request her daily work tasks. (TR 26 (citing TR 548).) The ALJ pointed out that although Plaintiff's work skills were assessed at a 60%, she was reported to be very thorough and confident in completing familiar tasks, and committed to completing her assignments accurately and within her assigned work hours. (TR 28 (citing TR 548).) The ALJ also cited the vocational program's records regarding Plaintiff's people and social skills, which indicate that Plaintiff was willing to accept feedback and redirection from others depending on who it was coming from, i.e. she was cooperative with her Salvation Army job coach but difficult with her job coach at the dog

grooming business. (TR 28 (citing TR 549).) In that regard, Plaintiff insisted that she didn't need someone standing over her shoulder. (TR 28 (citing TR 549).) The ALJ also noted that Plaintiff's appearance at her vocational work was rated at 100%. (TR 28 (citing TR 548).)

Additionally, the ALJ acknowledged that Plaintiff had previously received special education for a speech impairment but pointed out that recent testing placed Plaintiff in the average range of functioning for speech and language for her age range. (TR 26 (citing TR 478-80).) The ALJ also pointed out that at an appointment with a mental health provider, Plaintiff presented as cooperative, was able to remain on task and follow the topic of discussion, and exhibited a normal thought process and attention span. (TR 27 (citing TR 500).) Also, the ALJ reasoned that at the January 23, 2014 administrative hearing at which she presided, Plaintiff was polite, articulate, and motivated. (TR 27.) According to the ALJ, Plaintiff responded to questions appropriately and did not have any difficulty answering questions, talking, or developing a rapport with the ALJ. (TR 27, 28.)

At this juncture, it is worthy to note that the Sixth Circuit and courts in this district have found that evidence similar to that relied upon by the ALJ was sufficient to find a lack of deficits in adaptive functioning. *See, e.g., Hayes*, 357 F. App'x at 677 (evidence that the claimant cared for herself and her husband, cooked meals, did laundry, shopped, managed her finances, and used public transportation showed that her adaptive skills were not deficient); *Noble v. Comm'r of Soc. Sec.*, No. 14-CV-12588, 2015 WL 4934562, at *4 (E.D. Mich. Aug. 18, 2015) (claimant's ability to raise her children, live alone, attend GED classes, cook, do housework, count money, do basic math, achieve average grades in school, drive, and shop by herself are valid signs of adaptive functioning); and *Davis v. Comm'r of Soc. Sec.*, No. 13-13319, 2014 WL 7883577, at *3-4 (E.D. Mich. Dec. 15, 2014), *report and recommendation adopted*, No. 13-13319, 2015 WL

668035 (E.D. Mich. Feb. 17, 2015) (claimant who was capable of handling all self-care requirements, was reportedly well-groomed at therapy sessions, lived with his father, had a girlfriend, utilized public transportation if he could find someone to accompany him, and was able to regularly watch television and use the computer to socially interact with friends and family did not have the deficits in adaptive functioning necessary to satisfy the requirements of Listing 12.05).

The crux of Plaintiff's argument is not that the ALJ erred in relying upon the aforementioned evidence, but that there is other evidence in the record upon which the ALJ did not rely, which supports a finding that Plaintiff does have deficits in adaptive functioning. (Docket no. 15 at 17-20.) Plaintiff then cites to several examples of this evidence. (*Id.*) But while there is indeed evidence that tends to support Plaintiff's assertions, there is also substantial evidence supporting the ALJ's conclusion. Therefore, this issue falls within the ALJ's zone of choice, and her assessment should not be disturbed. *See Mullen v. Bowen, supra.* Because the ALJ's finding that the record did not establish that Plaintiff had deficits in adaptive functioning is supported by substantial evidence, and because a showing of deficits in adaptive functioning is necessary to meet Listing 12.05C, the ALJ's finding that Plaintiff's impairments did not meet Listing 12.05C is supported by substantial evidence, regardless of the propriety of the ALJ's evaluation of Plaintiff's IQ scores. Accordingly, Plaintiff's Motion for Summary Judgment should be denied.

## VI. CONCLUSION

For the reasons stated herein, the Court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 15) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 16).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 7, 2017          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: February 7, 2017          s/ Lisa C. Bartlett
                                 Case Manager

11